Filed 1/31/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **In re EDWARD C., a Person Coming Under the Juvenile Court Law.** | |
| **THE PEOPLE,** | |
| **Plaintiff and Respondent,** | **A138468** |
| **v.** | |
| **EDWARD C.,** | **(Contra Costa County** |
| **Defendant and Appellant.** | **Super. Ct. No. J0900801)** |

Edward C. was declared a ward of the juvenile court under Welfare and Institutions Code section 602[1] after he admitted two counts of continuous sexual abuse of a child under Penal Code section 288.5. He appeals from an order committing him to the Division of Juvenile Facilities (DJF) after he violated probation and a supplemental petition was found true. Appellant argues the commitment amounts to an ex post facto law because DJF was not an authorized placement for his offenses at the time of their commission. (See U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) He further argues a DJF commitment was an abuse of discretion in light of the less restrictive alternatives available. We reject both claims and, in light of the valid DJF commitment, strike the probation conditions imposed by the juvenile court.

---

[1]  Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

BACKGROUND

In 2009, when he was 14 years old, appellant was discovered touching his 10-year-old half brother inappropriately. The half brother revealed appellant had been engaging in sexual activity with him and with his 8-year-old sister (appellant's half sister) during the previous two years. The acts occurred several times a week, and included oral copulation and attempted anal and vaginal intercourse.

A petition was filed under section 602 charging appellant with multiple sexual offenses. He was declared a ward of the juvenile court after admitting two counts of continuous sexual abuse of a child under Penal Code section 288.5, between January 10, 2008 and May 7, 2009, in exchange for a dismissal of the other charges. Appellant was granted probation and placed in the residential juvenile sex offenders treatment program at Martins' Achievement Place (MAP), where he remained for the next two and one-half years.

Appellant's progress at MAP was uneven. He had a profound speech problem making it difficult for others to understand him, was believed to be dyslexic, and potentially fell on the autism spectrum. In a probation report filed in September 2010, his behavior was noted to be improving, but a few months later he admitted a probation violation after having consensual sex with his roommate and another resident. He was seen by staff as "struggling" in treatment: minimizing his offenses, falling into a "victim role" when confronted, and avoiding the emotions necessary to develop empathy.

In a report dated May 6, 2011, the probation officer stated appellant was "fully engaged in treatment and has made a significant amount of progress" since being moved to a different house at MAP. On February 14, 2012, however, appellant admitted he had violated probation because he was not progressing in his program and had failed to complete several of his sex offender treatment assignments. He remained in his placement at MAP and his attitude improved after he began taking prescription antidepressant medication. But problems continued as he persisted in sexualized and aggressive behavior, showing little insight into his issues.

2

On April 27, 2012, the probation officer filed a notice alleging appellant had violated probation by failing to follow the rules and regulations at MAP. The accompanying report noted that appellant was having difficulties completing his treatment-related assignments and described an incident in which he had been discovered in his room with his pants pulled down below his buttocks in the presence of two roommates. The probation officer recommended a change in placement, as appellant had been at MAP for two and one-half years and made "little to no progress." The probation violation was dismissed contingent on appellant's placement in a different treatment program.

Appellant was placed in the Breaking the Cycle (BTC) program in May 2012, but had difficulty following the rules and received several incident reports based on his inappropriate behavior with respect to boundaries, his "grooming" of other residents and staff with sexualized behavior, and his writing in a journal that was sexual in content and included graphics illustrating a penis. A quarterly report on his progress indicated appellant showed little ability or willingness to curtail his inappropriate conduct and did not appear to understand the severity of his situation, focusing more on perceived violations of his own rights.

Appellant turned 18 in November 2012. On November 7, the probation officer filed a notice alleging appellant had violated probation by failing to obey the staff at his court-ordered placement and by failing to fully participate in his sex offender treatment program. On that same date, the district attorney filed a supplemental petition under sections 602 and 778 seeking continuing jurisdiction over appellant and a modification of his placement, as he would not be permitted to remain in the BTC program past his 18th birthday. (See § 607, subd. (a) [juvenile court may retain jurisdiction over ward until age 21].)

The court held a combined hearing on the probation violation and supplemental petition on December 11, 2012. Rebecca Baker, the director of BTC, testified there were three phases to their program, which were expected to take six months to complete, but appellant had not finished Phase 1 during his time there. He had failed to complete

3

assignments or engage meaningfully in individual therapy, had repeatedly violated the rules, and had shown a "poor" level of participation in group therapy. The court found by clear and convincing evidence that appellant had violated probation and sustained the supplemental petition.

The court ordered appellant screened for different prospective placements. Because appellant was 18 years old with a high school diploma, he was ineligible for placement in any local residential program, the only options being the inpatient sex offender treatment available at DJF or an outpatient program. At the contested dispositional hearing, the district attorney urged the court to commit appellant to DJF. Defense counsel argued a commitment to DJF would constitute an ex post facto law, because that disposition was not available when appellant committed his offenses. The probation officer recommended that appellant be released to live with his aunt and treated as an outpatient.

Krys Hunter, DJF's acting senior supervising clinical psychologist, testified about the DJF sex offender treatment program available at two facilities, each having four units comprised of a maximum of 36 youths, staffed by two clinicians, a senior counselor, several youth counselors, two casework specialists or parole agents, and a treatment team specialist. The curriculum, which was recently revised to take into account research on juvenile sex offenders in particular, consists of seven stages and is designed to be completed in 18 to 24 months, including an eight- to ten-week orientation period focusing on healthy living. The youths in the program are assessed and segregated based on their risk of reoffense, and if they finish early are able to become mentors or take vocational training. The treatment includes components of group and individual therapy, resource groups designed to address other issues such as substance abuse or anger management, journals, role-playing assignments, the discussion of various books, and family therapy. According to Hunter, the program was integrated into every aspect of the youth's life at DJF and was designed to prevent future criminality in general, not merely the sex offenses that led to the commitment. Family members were encouraged to participate in

4

family therapy to keep them in touch with the youth and to help prepare the youth for eventual release.

Arthur Paull, the director of A Step Forward, a juvenile sex offender outpatient treatment program, had screened appellant for the program and found him to be at moderate risk of reoffending. At the dispositional hearing, he testified appellant would receive one or two hours a week of individual therapy if admitted to A Step Forward, along with monthly family therapy and quarterly case conferences as needed. If appellant were to participate in that program while residing with his aunt, as the probation department had recommended, the staff at A Step Forward would have to rely on honest, complete reporting from her to know whether appellant was at risk of reoffending. Paull did not think a DJF commitment would be productive because appellant had not done well in other residential programs; and, accordingly, he recommended an outpatient plan with a suspended DJF commitment rather than a straight commitment to DJF. He believed appellant would benefit from a structured outpatient program with good supervision, but had appellant not turned 18, he would have recommended a return to the MAP residential program. Paull believed appellant should get the maximum amount of residential treatment available before participating in A Step Forward.

The court committed appellant to DJF, finding it was probable he would benefit from the reformatory educational discipline or other treatment provided there, and that local resources were inappropriate.

## DISCUSSION

### I. *The DJF Commitment Did Not Violate Ex Post Facto Principles*

Appellant argues his commitment to DJF amounts to an unconstitutional ex post facto law because such a commitment was not authorized when he committed his crimes in 2008 through 2009. (See U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) To place appellant's argument in the proper context, some statutory background is in order.

A. DJF Commitments and 2007 Juvenile Realignment Legislation

Previous law placed an absolute bar on a DJF commitment only when the ward was under 11 years of age or suffered from a contagious disease that would place others

5

at risk. (See former § 733; Stats. 1992, ch. 10, § 5, p. 48, eff. Feb. 28, 1992.) In 2004, the state entered into a consent decree to settle a lawsuit brought on behalf of inmates of state juvenile facilities. (*In re Greg F.* (2012) 55 Cal.4th 393, 409 (*Greg F.*).) Recognizing the state could not afford to comply with the terms of the decree, the Legislature enacted realignment legislation in 2007 that narrowed the class of juveniles eligible for a DJF commitment and " ' "shifted responsibility to the counties for all but the most serious youth offenders." ' " (*Ibid.*)

As part of this realignment legislation, section 731 was amended to add subdivision (a)(4), allowing a commitment to DJF "if the ward has committed an offense described in subdivision (b) of section 707 and is not otherwise ineligible for a commitment to the division under Section 733." (Stats. 2007, ch. 257, § 2, p. 2814, eff. Sept. 29, 2007; see also Stats. 2007, ch. 175, § 19, p. 2089, eff. Aug. 24, 2007.) Section 733 was amended to provide that a ward could not be committed to DJF if, in addition to being under the age of 11 or having a contagious disease, "(c) The ward has been or is adjudged a ward of the court pursuant to Section 602, and the most recent offense alleged in any petition and admitted or found true by the court is not described in subdivision (b) of Section 707, unless the offense is a sex offense set forth in subdivision (c) of section 290.008 of the Penal Code."[2] (Added by Stats. 2007, ch. 175, § 22, p. 2090, eff. Aug. 24, 2007, amended by Stats. 2008, ch. 699, § 28, p. 4863, eff. Feb. 29, 2012.)

Documents contained in the legislative history of the 2007 realignment suggest the Legislature did not intend to exclude juvenile sex offenders from DJF commitments. Floor analyses in both houses stated, "Juvenile sex offenders are excluded from this

---

[2] Penal Code section 290.008, enacted in 2007, sets forth the sex offender registration requirements for juveniles committed to DJF. (Stats. 2007, ch. 579, § 16, p. 4811, eff. Oct. 13, 2007.) Subdivision (c) of section 290.008 lists the offenses for which such wards must register. The juvenile sex offender registration provisions were formerly contained in Penal Code section 290, subdivision (d), which was in effect at some points relevant to our discussion. (Stats. 2006, ch. 337, § 11, p. 2591, eff. Sept. 20, 2006.) We refer to section 290.008 throughout this opinion for the sake of clarity.

6

change and will not be impacted by this bill." (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 324 (2011-2012 Reg. Sess.) as amended Feb. 7, 2012, p. 7 [discussing Sen. Bill No. 81 (2007-2008 Reg. Sess.) as amended July 19, 2007].) Assembly Bill No. 191 (2007-2008 Reg. Sess.) was enacted in September 2007 to modify portions of Senate Bill No. 81 to include, among other things, "conforming changes to ensure that none of the juvenile justice reforms contained in [Senate Bill No.] 81 affect juveniles adjudicated of a sex offense as set forth in [Penal Code section 290.008]." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 324 (2011-2012 Reg. Sess.) as amended Feb. 7, 2012, p. 4, italics omitted.) Section 731.1, which was also enacted as part of the realignment, allowed a recall of wards previously committed to DJF "in the case of any ward whose commitment offense was not an offense listed in subdivision (b) of Section 707, unless the offense was a sex offense set forth in subdivision (c) of Section 290.008 of the Penal Code." (Stats. 2007, ch. 257, § 2, p. 2814, eff. Sept. 29, 2007; see also Stats. 2007, ch. 175, § 19, p. 2089, eff. Aug. 24, 2007, operative Sept. 1, 2007.) The limitation on juvenile offenders eligible for a DJF commitment was " 'motivated by a desire to reduce the cost and increase the effectiveness of juvenile confinement.' [Citation] . . . '[I]t is clear that the Legislature intended to preserve the possibility of DJF commitments for violent offenders and sex offenders.' " (*Greg F.*, *supra*, 55 Cal.4th at p. 410.)

Notwithstanding this apparent intent to continue allowing DJF commitments for youthful sex offenders, section 731, subdivision (a)(4), as enacted in 2007, purported to authorize such a commitment only when the minor had committed an offense listed in section 707, subdivision (b). Section 707, subdivision (b) lists 30 serious and violent crimes, including many forcible sex offenses, but it does not include a number of nonforcible sex offenses that are listed in Penal Code section 290.008, subdivision (c), as referenced in section 733, subdivision (c). Lewd conduct under Penal Code section 288, subdivision (a) and continuous sexual abuse under Penal Code section 288.5 are among the sex offenses that are listed in Penal Code section 290.008, subdivision (c), but do not appear in section 707, subdivision (b).

B. *In re C.H.*

In *In re C.H.* (2011) 53 Cal.4th 94 (*C.H.*), the state Supreme Court considered the case of a minor who had been committed to DJF based solely on a violation of Penal Code section 288, subdivision (a). It held, "[A] juvenile court lacks authority to commit a ward to the DJF under section 731[, subdivision] (a)(4) if that ward has never been adjudged to have committed an offense described in section 707[, subdivision] (b), even if his or her most recent offense alleged in a petition and admitted or found true by the juvenile court is a sex offense set forth in [Penal Code] section 290.008[, subdivision] (c) as referenced in section 733[, subdivision] (c)." (*Id*. at pp. 97-98.) The court explained, "Read together, sections 731[, subdivision] (a)(4) and 733[, subdivision] (c) limit the class of wards who may be committed to the DJF to those wards who (1) have committed an offense described in section 707[, subdivision] (b) and (2) whose most recent offense alleged in any petition and admitted or found to be true by the court is listed either in section 707[, subdivision] (b) or Penal Code section 290.008[, subdivision] (c)." (*Id.* at p. 102.)

The court in *C.H.* declined to consider documents in the history of the 2007 realignment legislation that suggested the Legislature intended to permit juvenile sex offenders to be committed to DJF. "[O]nly when a statute's language is ambiguous or susceptible of more than one reasonable interpretation may we turn to extrinsic aids to assist in interpretation." (*C.H*., *supra*, 53 Cal.4th at p. 107.) Because sections 731, subdivision (a)(4) and 733, subdivision (c) had a plain meaning that did not yield absurd results, it would be inappropriate to "resort to the legislative history . . . to consider whether an otherwise undisclosed legislative intent might be reflected." (*Ibid*.)

C. 2012 Amendments—Assembly Bill No. 324

In response to *C.H.*, the Legislature enacted Assembly Bill No. 324 ((2011-2012 Reg. Sess.)) as urgency legislation effective February 29, 2012. (Stats. 2012, ch. 7, § 4.) The bill amended section 731, subdivision (a)(4) to authorize a DJF commitment when the ward "has committed an offense described in subdivision (b) of Section 707 *or subdivision (c) of Section 290.008 of the Penal Code*, and is not otherwise ineligible for

8

commitment to the division under Section 733." (Stats. 2012, ch. 7, § 1, italics added.) Section 733, subdivision (c) was amended to preclude a DJF commitment when "the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707 or subdivision (c) of Section 290.008 of the Penal Code." (Stats. 2012, ch. 7, § 2.)

In addition to clarifying that a DJF commitment is authorized for a ward who committed a sex offense listed in Penal Code section 290.008, subdivision (c), even if the offense was not also listed in section 707, subdivision (b), Assembly Bill No. 324 (2011-2012 Reg. Sess.) added section 1752.16 to address the situation of wards who would otherwise be entitled to release from DJF under the authority of *C.H*: "(a) The chief of [DJF] . . . may enter into contracts with any county of this state for the [DJF] to furnish housing to a ward who was in the custody of the [DJF] on December 12, 2011, and whose commitment was recalled based on both of the following: (1) The ward was committed to [DJF] for the commission of an offense described in subdivision (c) of Section 290.008 of the Penal Code. [¶] (2) The ward has not been adjudged a ward of the court pursuant to Section 602 for commission of an offense described in subdivision (b) of Section 707. [¶] (b) It is the intent of the Legislature in enacting this act to address the California Supreme Court's ruling in [*C.H.*]." (Stats. 2012, ch. 7, § 3, eff. Feb. 29, 2012.)

D. Ex Post Facto Analysis

It is against the foregoing backdrop that we consider appellant's ex post facto claim.

The state and federal ex post facto clauses have the same meaning and apply to juvenile wardship proceedings. (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 171-172 (*John L.*); *In re Melvin J.* (2000) 81 Cal.App.4th 742, 760, overruled on other grounds in *John L.*, at p. 181, fn. 7.) To fall within the ex post facto provisions, " 'two critical elements' " must be met. (*John L.*, at p. 172.) "First, the law must be retroactive." (*Ibid.*) Second, "the law must have one of the following four effects: it makes criminal acts that were innocent when done; it makes the crime greater or more aggravated than it was when committed; it inflicts a greater punishment for the crime

9

than was available when the crime was committed; or it alters the rules of evidence or the required proof for conviction." (*In re Robert M.* (2013) 215 Cal.App.4th 1178, 1186 (*Robert M.*).)

Appellant argues that in committing him to DJF, the juvenile court retroactively applied the 2012 amendment to section 731, subdivision (a)(4) and inflicted a greater punishment than was available when he committed his offenses. The People acknowledge the 2012 amendment was applied retroactively, but contend there is no ex post facto problem because a DJF commitment does not constitute greater punishment than the local commitments that were available when appellant committed the offenses. We agree with the People.

1. A DJF Commitment Is Not Greater Punishment than a Local Placement

A juvenile ward's treatment under the delinquency law has a different focus than punishment under adult criminal statutes. "Significant differences between the juvenile and adult offender laws underscore their different goals: The former seeks to rehabilitate, while the latter seeks to punish." (*In re Julian R.* (2009) 47 Cal.4th 487, 496 (*Julian R.*); see § 202, subd. (a).) Though punishment is an appropriate consideration when it promotes the ultimate goal of rehabilitation, punishment under the juvenile law may not be used as a form of retribution. (*Julian R.*, at p. 496; see § 202, subd. (e).)

Although a DJF commitment has been described as more "restrictive" than any other disposition for juvenile wards (*Greg F.*, *supra*, 55 Cal.4th at p. 404), it does not amount to greater punishment because it does not increase the time a ward must spend in custody. Whenever a ward is removed from the custody of his or her parent or guardian, "the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (§ 726, subd. (d).) A ward committed to DJF may not be held in excess of the maximum term of confinement described in section 726; and, additionally, the juvenile court may specify a lesser period of confinement "based upon the facts and circumstances of the matter or matters that brought or continued the ward

10

under the jurisdiction of the juvenile court." (§ 731, subd. (c); *Julian R.*, *supra*, 47 Cal.4th at p. 498.) Juvenile offenders committed to DJF are, like other wards, generally subject to juvenile court jurisdiction only until the age of 21, or 25 if the ward was brought within the court's jurisdiction for an offense under section 707, subdivision (b). (§§ 607, subds. (a)-(c), 1769, subds. (a)-(c).)

Sections 731 and 733, setting forth the potential dispositions for a juvenile ward, "do not address punishment or penalties for criminal offenses. Rather, they govern where a juvenile delinquent may serve time for purposes of rehabilitation." (*In re Carl N.* (2008) 160 Cal.App.4th 423, 438 (*Carl N.*).) Accordingly, courts have concluded the amendments to sections 731 and 733 under the 2007 realignment legislation, which eliminated DJF as a possible disposition in most cases, did not amount to a mitigation of punishment. (*In re N.D.* (2008) 167 Cal.App.4th 885, 891 (*N.D.*); *Carl N.*, at p. 438.) By a parity of reasoning, the 2012 amendments to sections 731 and 733, which revived the availability of a DJF commitment for certain sex offenders, cannot be logically viewed as an increase in punishment for purposes of ex post facto analysis.

2. *In re Robert M.* and the Nonpenal Consequences of a DJF Commitment

Both appellant and the People argue their position is supported by the decision in *Robert M.*, in which the defendant was committed to DJF based solely on a lewd act under section 288, subdivision (a) that occurred after the 2007 realignment legislation. (*Robert M.*, *supra*, 215 Cal.App.4th at p. 1181.) In that case, the defendant's DJF commitment was recalled pursuant to the decision in *C.H.*, and the juvenile court authorized the probation officer to seek housing at DJF for the purpose of completing sex offender treatment there, as authorized by newly enacted section 1752.16. On appeal, the court rejected the defendant's ex post facto challenge to the housing order, concluding it did not increase the defendant's punishment because it merely created another treatment option in a different location than local programs. (*Id*. at p. 1186.)

The People argue the *Robert M.* court's characterization of housing at DJF as simply another treatment option is equally true for a DJF commitment. Appellant notes that elsewhere in its opinion, the *Robert M.* court emphasized the difference between

11

such an order and a commitment to DJF: "A commitment to DJF and a commitment to juvenile hall with housing at DJF are distinctly different orders with different results. First, a ward committed to DJF who has committed any of the wide variety of sex crimes listed in Penal Code section 290.008, subdivision (c), is required to register as a sex offender pursuant to Penal Code section 290, subdivision (b). . . . There is no similar requirement for wards committed to juvenile hall for the same sexual offenses. . . . Second, after a ward is committed to DJF, the decision to release the ward from custody resides with the Juvenile Parole Board." (*Robert M.*, *supra*, 215 Cal.App.4th at pp. 1182-1183.)

The portion of the *Robert M.* decision cited by appellant does not appear in the court's ex post facto analysis, but in a portion of the discussion rejecting a distinct claim that the housing order was a " 'transparent procedural subterfuge' " to avoid the holding of *C.H.* The court distinguished a housing order at DJF from a commitment to DJF to show the housing order was not "merely a semantically different authorization of the same punishment declared impermissible in *In re C.H.*" (*Robert M.*, *supra*, 215 Cal.App.4th at p. 1183.) *Robert M.* did not consider the different question of whether a DJF commitment would amount to an ex post facto law if applied to a juvenile whose non-section 707, subdivision (b) offense was committed after the 2007 realignment legislation, but before Assembly Bill No. 324 went into effect in 2012. "[I]t is axiomatic that cases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.) More significantly, the differences between a DJF commitment and a DJF housing order noted in *Robert M.* do not persuade us that the former amounts to an increase in punishment.

The *Robert M.* court noted that a juvenile committed to DJF for a sex offense enumerated in Penal Code section 290.008 must register as a sex offender upon release, whereas wards placed locally for the same sex offenses are not required to register. (*Robert M.*, *supra*, 215 Cal.App.4th at pp. 1182-1183.) Sex offender registration is a civil regulatory scheme, rather than punishment, for ex post facto purposes. (*Smith v. Doe* (2003) 538 U.S. 84, 92-96; *People v. Castellanos* (1999) 21 Cal.4th 785, 799-800;

12

*People v. Allen* (1999) 76 Cal.App.4th 999, 1001-1003.) If sex offender registration is not punishment, a DJF commitment is not greater punishment by virtue of a registration requirement.

Similarly, the *Robert M.* court's observation that a DJF commitment consigns the decision concerning a ward's release to that facility, rather than the juvenile court (*Robert M.*, *supra*, 215 Cal.App.4th at p. 1183), does not mean that a DJF commitment is an increase in punishment. Nothing in the record suggests a ward committed to DJF must be confined for a greater length of time than one committed to a local program. (See *In re A.G.* (2011) 193 Cal.App.4th 791, 805, fn. 12 [length of juvenile's DJF commitment determined by DJF, with maximum term set by juvenile court serving as an upper limit].)

Finally, we are cognizant that a ward committed to DJF may be detained past the age of 21 (or 25, for a section 707, subdivision (b) offense) when a petition is sustained under section 1800 et seq., which allows for an extended commitment in two-year increments when the ward "would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality that causes the person to have serious difficulty controlling his or her dangerous behavior." (§ 1800, subd. (a); see §§ 607, subds. (a)-(c), 1769.) This procedure, which includes the right to a jury trial and a standard of proof beyond a reasonable doubt, is civil in nature and "involves neither a juvenile proceeding nor an extension of a prior juvenile court proceeding." (*In re Howard N.* (2005) 35 Cal.4th 117, 126.) It is akin to civil commitment procedures in adult court, to which ex post facto principles do not apply. (See *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1171 [sexually violent predator commitment under § 6600 et seq. not penal and not an ex post facto law]; *People v. Robinson* (1998) 63 Cal.App.4th 348, 350-352 [mentally disordered offender commitment under § 2960 et seq. not penal in nature and not an ex post facto law].) Appellant's potential exposure to proceedings under section 1800 if committed to DJF does not render DJF a harsher punishment.[3]

---

[3] In *In re Valenzuela* (1969) 275 Cal.App.2d 483, the court found a prior version of the extended commitment procedure under section 1800 et seq. to be penal rather than civil in nature, because a ward over 21 could be transferred to state prison for housing.

## II. *The Juvenile Court Did Not Abuse Its Discretion in Committing Appellant to DJF*

Appellant argues the DJF commitment, even if authorized by law, was inappropriate given the facts of his case. He argues the court should have followed the probation officer's recommendation to release him to the home of his aunt subject to his participation in an outpatient juvenile sex offender treatment program. We disagree.

"No ward of the juvenile court shall be committed to [DJF] unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by [DJF]." (§ 734.) A commitment decision is reviewed on appeal for abuse of discretion, indulging all reasonable inferences to support the juvenile court's judgment. (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) "We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) "A [DJF] commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate." (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250.)

The juvenile court in this case did not abuse its discretion in concluding a DJF commitment was necessary because outpatient treatment would be ineffective. Appellant had made little, if any, progress toward rehabilitation. He had performed poorly in two

---

Under current law, a ward over 21 who is the subject of a section 1800 commitment may be transferred to the Director of Corrections for "placement in an appropriate institution." (§ 1802.) An "appropriate institution" would necessarily be a facility in which the person committed would receive special treatment for his or her mental disorder. Any attempt to house a section 1800 committee in the general prison population would be subject to challenge on constitutional grounds and we have no reason to believe such a placement order would be made. (See *People v. Feagley* (1975) 14 Cal.3d 338, 375 [housing nontreatable mentally disordered sex offenders in general prison population is cruel and unusual punishment].)

local residential treatment programs, lacked insight into his issues, demonstrated continuing behavioral problems, and was assessed to have a moderate to high risk of reoffense. The probation officer had "grave concerns [appellant] will sexually re-offend," and would have recommended a local residential program if one had been available. Paull, though willing to accept appellant into the A Step Forward outpatient program, was in favor of appellant first receiving all the inpatient treatment available. The sex offender treatment program at DJF, as described by Hunter, was inpatient, highly structured and comprehensive. The juvenile court's decision to commit appellant to DJF rather than placing him on probation with outpatient treatment was reasonable under the circumstances.

III. *The Probation Terms Must be Stricken*

At the dispositional hearing at which appellant was committed to DJF, the juvenile court set forth a number of probation terms for appellant to follow. Appellant argues that to the extent these terms pertained to the DJF commitment, and not simply the time he was to spend in juvenile hall pending his transfer to DJF, they are invalid. We agree, because the juvenile court loses the authority to impose conditions of probation once it commits a ward to DJF. (*In re Ronny P.* (2004) 117 Cal.App.4th 1204, 1208; *In re Allen N.* (2000) 84 Cal.App.4th 513, 516.)

DISPOSITION

The probation conditions imposed by the court in its dispositional order of April 8, 2013, committing appellant to DJF, are stricken. As so modified, the judgment is affirmed.

15

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.

(A138468)

Superior Court of Contra Costa County, No. J0900801, Lewis A. Davis, Judge.

Jonathan Soglin and Stephanie Clarke, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Ronald E. Niver and Christina vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.