Filed 6/13/16  In re Christopher S. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re CHRISTOPHER S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER S.,<br><br>        Defendant and Appellant. | A145557<br><br>(Solano County<br>Super. Ct. No. J41873) |

Christopher S. (Christopher) appeals from a dispositional order of the juvenile court committing him to the Division of Juvenile Justice (Division).  He argues that the order should be reversed because the juvenile court abused its discretion by committing him to the Division without adequately considering his mental health and special education needs.  In the alternative, he argues that the matter should be remanded for the juvenile court to make findings about his educational needs and forward those findings to the Division.  He also argues that we should strike probation conditions imposed on him by the juvenile court because the court lacked authority to impose such conditions after he was committed to the Division.

We will strike the probation conditions and affirm the dispositional order in all other respects.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

A.      *Christopher's History of Delinquency and Probation*

The dispositional order challenged in this appeal was issued in June 2015 after Christopher was found to have violated a condition of his probation.  Christopher was then 17 years old, and had an extensive history with the juvenile court and the probation department.  Because his history informed the juvenile court's order, we summarize it here in some detail.

1.      *Wardship Petition Filed in February 2013*

In February 2013, the Solano County District Attorney filed a wardship petition pursuant to Welfare and Institutions Code[1] section 602, subdivision (a), alleging that Christopher, then age 14, committed attempted first degree residential burglary, a serious felony (Pen. Code, §§ 459, 664, 1192.7, subd. (c)) and petty theft (Pen. Code, § 484, subd. (a)).  The allegations arose from separate incidents about a week apart.[2] Christopher admitted both counts and was granted Deferred Entry of Judgment (DEJ) with various terms and conditions.

2.      *Amended Wardship Petition filed in March 2013*

In March 2013, the district attorney filed an amended wardship petition alleging that just six days after being granted DEJ, Christopher committed battery on school property (Pen. Code, § 243.2, subd. (a)).  Christopher admitted that he had punched a fellow student in the head twice.  He remained on DEJ.

3.      *Second and Third Amended Wardship Petitions Filed in July 2013*

In July 2013, the district attorney filed a second amended wardship petition alleging that Christopher committed grand theft from a person (Pen. Code, § 487, subd. (c)).  Christopher stole a cell phone from a woman who was standing in her front yard,

---

[1] All further unspecified statutory references are to the Welfare and Institutions Code.

[2] The probation department's intake report stated that apart from these two charges Christopher had four previous referrals in the past four months, for battery, felony theft and resisting arrest.

2

and admitted that he stole the phone to sell it because he "needed some weed and some coke." Christopher remained on DEJ.

Later that month, the district attorney filed a third amended wardship petition alleging second degree robbery (Pen. Code, § 211), assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)), battery with serious bodily injury (Pen. Code, § 243, subd. (d)), and attempted carjacking (Pen. Code, §§ 215, subd. (a); 664). According to the police report, Christopher had approached a woman who was sitting in her car with the door open and tried to sell her a camera. She said she had no money and looked toward her purse, at which point Christopher grabbed her, pulled her by the hair, punched her, pulled her out of the car and threw her to the ground. When she tried to run away, he chased her and punched her again, knocking her down, and then kicked her. Christopher then was seen by a witness sitting in the driver's seat of the victim's car, apparently trying to start the car with a knife or screwdriver. Christopher was chased away by a witness, and detained by police nearby. In the area where he was detained, police found a Walmart card and two watches, one of which belonged to the victim. The probation department reported that Christopher was detained at juvenile hall, where he positive for cocaine, amphetamines, and THC. In August 2013, in exchange for dismissal of the remaining counts in the previous petitions, Christopher admitted second degree robbery on condition that it would not be used as a strike.

4.  *Disposition and Probation - August 2013 through July 2014*

In advance of the dispositional hearing, the probation department reported that Christopher admitted he had a problem with cocaine and marijuana, and that he said alcohol and ecstasy were not a problem for him, although he used them when they were available. The probation department summarized Christopher's performance on probation to date as "unsatisfactory," noting that he had failed to appear for the first three sessions of an anger management program and was dropped from the program, that he had behavior problems at school, and that although he tested negative on random drug tests in the early period after he was granted DEJ, he subsequently began using ecstasy and cocaine on a regular basis.

3

At the dispositional hearing in August 2013, Christopher was adjudged a ward of the court, and placed on probation consisting of 120 days in the "Changing Paths" program at juvenile hall, followed by participation in the "New Foundations" program. The probation department reported that Christopher did "very well" in the Changing Paths program, but "struggled" toward the end of the New Foundations program, as evidenced by fighting and by taking Vicodin while on furlough. As a result, his time in New Foundations was extended. In May 2014, Christopher completed New Foundations and was released on home probation, subject to various terms and conditions.

A month after his release from New Foundations, Christopher reported to his probation officer that he was using marijuana. Christopher, his mother, and the probation officer agreed that Christopher would begin a chemical dependency recovery program, and Christopher was informed that if his use of marijuana continued, a notice of probation violation would likely be filed. A month after that, in July 2014, the probation department filed a notice of probation violation, but for a different reason: the department alleged that Christopher had violated probation by being away from home for several days without permission. Christopher admitted the violation in exchange for being reinstated on probation with modified terms and conditions, including 60 days on an electronic monitoring program. At the dispositional hearing, Christopher's counsel said, "And I should add, I informed [Christopher] that if there was another violation, they would be considering out-of-home placement. [The probation officer] didn't think it was appropriate at this time, but in the future he would be at great risk for out-of-home placement, which I've also conveyed to him." The juvenile court responded, "Well, I'm of the same mind. I don't like to commit to something until I know what the circumstances are at the time, but I think that the message is that future violations are probably going to be dealt with in a significantly different manner."

5. *August 2014 Wardship Petition and Subsequent Violation of Probation*

In August 2014, just a few weeks after Christopher was reinstated on probation and while he was on the electronic monitoring program, Christopher and a companion were alleged to have robbed a homeless man of his wallet. Christopher was informed of

4

his *Miranda* rights, and then admitted being present at the robbery, but denied taking the victim's wallet. The district attorney filed a wardship petition alleging that Christopher committed second degree robbery (Pen. Code, § 211.) The juvenile court found the allegation true after a contested jurisdictional hearing.

Before the dispositional hearing, the probation department prepared a supplemental report stating that Christopher tested positive for cocaine and marijuana when he was booked at juvenile hall the day of his offense. His behavior at juvenile hall during the weeks between his arrest and the dispositional hearing was characterized as "marginal." After a contested dispositional hearing, the juvenile court ordered Christopher to serve an additional 60 days in juvenile hall, to be followed by the New Foundations program, and ordered him to complete the "Challenge Program" after successful completion of New Foundations. The juvenile court also ordered a psychological evaluation of Christopher pursuant to section 741. Christopher began his second stay at New Foundations in January 2015.

In March 2015, after Christopher had been at New Foundations for less than two months, he was terminated from the program for repeated violations of the rules. The probation department filed a notice of probation violation, and the allegation was found true after a contested jurisdictional hearing. At the hearing, Christopher's probation officer testified that Christopher had previously completed the New Foundations program and was familiar with the rules, yet on his second stay he accrued "20 separate incidents within 56 days." She testified that Christopher was terminated because he caused "continuous disruption to the programming." In the final incident before his termination, Christopher did not comply with instructions, became aggressive with staff, and was "placed on a 48 hour timeout" at juvenile hall.

A contested dispositional hearing was held in June 2015. The order pronounced at the June 2015 hearing is at issue in this appeal.

B.      *Contested Dispositional Hearing—June 2015*

1.      *The Probation Department Report*

In advance of the dispositional hearing, the probation department prepared a supplemental report addressing Christopher's educational performance and psychological status and his past performance on probation.  The report stated that Christopher's performance at school was unsatisfactory.  The conduct for which he was charged with battery in March 2013 led to his being expelled from school.  By then, Christopher had accumulated 23 days of suspension during that school year for disruptive and defiant behavior.  He began attending a new school, but continued being disruptive and defiant.[3] In May 2013, the probation department met with Christopher, his mother, and school staff to discuss Christopher's behavior, which was described as "becoming irate, not listening, failing to calm down, use of excessive profanity and . . . taking aggressive postures with other students and staff alike."  At the meeting, it was decided that Christopher, who had previously been diagnosed with attention deficit hyperactivity disorder (ADHD), would be assessed for special education.[4]  It appeared that Christopher had not been taking the Adderall that was prescribed for his ADHD, and all agreed that Christopher must take his prescribed medication.  Christopher's mother agreed to make sure Christopher took the medication and also agreed to begin pursuing behavioral health services for Christopher, such as mental health counseling and a psychological assessment.  A school psychologist attended a follow-up meeting the next month, and

---

[3] This new school was the third school that Christopher had attended during the 2012-2013 academic year, when he was in the ninth grade.  First he attended a school from which he was suspended on five occasions.  Then he enrolled in the school from which he was expelled as a result of the battery charge.  After the expulsion, he enrolled in the third school.  In January 2015, Christopher told the court-appointed psychologist that he was a "superior student" until 6th grade, but "was never at school for long from the 7th grade up."

[4] Christopher was assessed at his mother's request; she was concerned about his declining grades and low reading skills, in light of his past performance in reading and his placement in Gifted and Talented Education (GATE) classes in a previous school district.

reported that testing revealed that Christopher had no significant cognitive issues, required no special education services, did not qualify for an IEP [Individualized Education Program], and did not meet the criteria for a diagnosis of emotional disturbance. The psychologist reported that when Christopher takes his medication, he is a bright student, and can focus and do his work without significant behavior problems. Christopher and his mother agreed that Christopher would continue taking his medication and pursue services at Kaiser. But by then Christopher was regularly using drugs, including ecstasy. Just a few days later, he was charged with theft. Within a month he was using powder cocaine daily, and was charged with robbery.

The probation department's report also summarized the court-ordered psychological evaluation of Christopher that was completed in January 2015. The psychologist concluded that Christopher had problems with impulsivity, poor judgment, and limited self-insight, as well as significant substance abuse problems. She said Christopher is "inclined to have difficulties in following rules and conventions set by others, dismissing these as not being applicable or relevant to him," and opined that he needed a program that is "very structured and carefully monitors him that also includes social skill-building and increasing his appropriate problem-solving skills."

The probation department's report stated that during the two years Christopher had been under the supervision of the probation department, he continuously failed to comply with the terms of his probation. According to the report, Christopher had done well at juvenile hall after he was first terminated from New Foundations, but his behavior "declined and he was placed on a behavior modification program." Christopher's mother requested that Christopher be given an opportunity to participate in the Challenge Program, but the probation department determined that the program, in which "interactive journaling" is the only treatment for substance abuse, would not appropriately address Christopher's significant substance abuse issues. The department noted that even the high level of treatment services at New Foundations "appeared to have been ineffective in assisting him in making a positive adjustment," and opined that "placement in a group home would not adequately provide for the safety of the

7

community." The department concluded that commitment to the Division would offer Christopher "the most comprehensive services available to appropriately address his treatment needs, all while providing the maximum in community protection."

2.     *Testimony of Nadia Hollomon*

Nadia Hollomon, Christopher's probation officer since July 2013, testified that she was aware that Christopher had been diagnosed with ADHD, that Adderall had been prescribed for him, and that he said Adderall did not appear to be working. Christopher began his most recent term at New Foundations in late January 2015, and began receiving Adderall there in February. He was not evaluated for an IEP while at New Foundations, nor was a behavioral intervention plan or contract in place for him. Hollomon testified that she was recommending that Christopher be placed with the Division because of his overall behavior, including his disruptions. In making her recommendation, she considered Christopher's overall needs, the services that he had received from the probation department and the services that were available through the probation department; a group home would not be sufficient.

3.     *Testimony of Andrew Tojman*

Psychologist Andrew Tojman testified as an expert in the area of psychology and ADHD. In November 2013, he reviewed Christopher's police reports and school records and then spent about three hours with Christopher, examining him and administering standard psychological tests. Tojman also spoke with Christopher's mother. Tojman prepared a written psychological evaluation of Christopher in January 2014.[5] He had not met with Christopher since the initial evaluation in November 2013, but was "familiar with his file."[6]

Tojman testified that Christopher met the criteria for ADHD, had some symptoms consistent with a bipolar disorder, and met the criteria for special education and an IEP.

___

[5] The evaluation is not part of the record on appeal.

[6] The record does not indicate what material Tojman reviewed, if any, between the time he met with Christopher in November 2013 and the date of his testimony in June 2015.

He testified that a behavioral contract is an alternative to an IEP for minors who are so disruptive that a behavioral intervention can help them do better. He noted that Christopher had not consistently taken Adderall, and opined that Adderall was necessary for Christopher to learn and that the prescribed dose might have been too low. He believed that an IEP "might have helped" Christopher and that if a person responds well to medication, an IEP might not be necessary. He believed that Christopher's mental health issues could be addressed with proper treatment, whether Christopher is in or out of custody.

4. *Testimony of Doug Ugarkovich*

Doug Ugarkovich, a community liaison for the Division, testified that as part of the Division's intake process a minor's educational, psychological, and "at-risk-needs" are assessed, and arrangements are made to accommodate any disabilities. Based on those assessments, a treatment plan is developed. Programs are available to address substance abuse and mental health issues. The Division attempts to engage the minor's family with the goal of encouraging a strong family support system that can help a minor "have a much better outcome and stay[] out of trouble."

5. *Dispositional Order*

At the conclusion of the hearing, after argument by Christopher's counsel and the district attorney, the juvenile court ordered that Christopher continue as a ward of the court and committed him to the Division.[7] The judge remarked, "The problem is that . . . notwithstanding the crimes, he has been in New Foundations before. Although it was a different program last time, I ordered him to New Foundations. Apparently, it didn't work. I do think it's fair to say we haven't tried a multitude of services. This one is from Kaiser. I think probation has been patient and didn't violate him until several weeks after he started to ca[u]se problems. [¶] There's really no other alternative. I don't see any other choice at this point. I think the best alternative is [the Division]. [¶] The court has

---

[7] The written orders issued on the same day as the dispositional hearing included terms and conditions of probation, which Christopher challenges. We address his challenge below, in section B of the Discussion.

read and reviewed and considered all the evidence in this case. . . . [¶] I don't find that medication had any [bearing] here on this case." The commitment order, which the juvenile court signed on June 21, 2015, included the finding that Christopher "is not an individual with exceptional needs." This appeal timely followed.

## DISCUSSION

A.  *The Juvenile Court Did Not Abuse Its Discretion in Committing Christopher to the Division*

Christopher argues that the juvenile court abused its discretion in committing him to the Division because the record does not contain substantial evidence of probable benefit to him from the commitment. This argument is based on the premise that the juvenile court "did not look at the entire dispositional picture" before committing Christopher to the Division, and that the juvenile court should have ordered "further mental health evaluations, an updated IEP assessment, and other interventions" before making its commitment decision. Therefore, Christopher concludes, we must reverse the juvenile court's order committing Christopher to the Division or "remand the matter to permit the juvenile court to investigate the issue, to make proper findings, and to forward those findings to the [Division]." The Attorney General argues that the evidence presented to the juvenile court at the dispositional hearing and in the probation department's disposition report amply supported the court's commitment order, and that the juvenile court made the necessary findings. We agree with the Attorney General.

1.  *Applicable Law*

Section 202, subdivision (b), provides that minors who are "under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment if that is consistent with the rehabilitative objectives of this chapter." "Punishment" is defined as "the imposition of sanctions," and may include payment of a fine, community service, conditions of probation, "[c]ommitment of the minor to a local detention or treatment

10

facility, such as a juvenile hall, camp, or ranch," and "[c]ommitment of the minor to the Division." (§ 202, subd. (e).)

In determining the appropriate disposition for a delinquent minor, the juvenile court "shall consider, in addition to relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.) "No ward of the juvenile court shall be committed to [the Division] unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by [the Division]." (§ 734.)

To determine what disposition is appropriate for a minor's circumstances, as required by section 202, subdivision (b), "a court must review those circumstances every time the minor appears for a dispositional hearing." (*In re Ronnie P.* (1992) 10 Cal.App.4th 1079, 1088 (*Ronnie P.*).) The California Rules of Court require the juvenile court at a dispositional hearing in a delinquency case to "[c]onsider and determine whether the child's or youth's educational, physical, mental health, and developmental needs, including any need for special education and related services are being met." (Cal. Rules of Court, rule 5.651(b)(2)(A).) "Education Code section 56000 declares that 'all individuals with exceptional needs have a right to participate in free appropriate public education . . . .' 'Individuals with exceptional needs' includes any child who is '[i]dentified by an . . . [IEP] team as a child with a disability,' as defined by the Individuals with Disabilities Education Act (20 U.S.C. § 1400 et seq.), whose impairment 'requires instruction, services, or both which cannot be provided with modification of the regular school program' and who meets certain other prescribed eligibility criteria. (Ed. Code, § 56026, subds. (a), (b), (c) & (d).) A child qualifies as an individual with exceptional needs if the IEP team determines 'the degree of the pupil's impairment . . . requires special education in one or more of the program options authorized by Section

11

56361 of the Education Code.' (Cal. Code Regs., tit. 5, § 3030.)" (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1397-1398, fns. omitted (*Angela M.*).)[8]

Before committing a minor to the Division, the "juvenile court must determine if the record supports a finding that it is *probable* the minor will benefit" from the commitment. (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486 (*Jonathan T.*), citing A*ngela M.*, *supra*, 111 Cal.App.4th at p. 1396.) "There is no requirement that the court find exactly how a minor will benefit from" the commitment. (*Jonathan T.*, *supra*, 166 Cal.App.4th at p. 486.)

"The appellate court reviews a commitment decision for abuse of discretion, indulging all reasonable inferences to support the juvenile court's decision." (*Angela M.*, *supra*, 111 Cal.App.4th at p. 1396.) " 'We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence.' (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) 'A . . . commitment [to the Division] is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate.' (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250.)" (*In re Edward C.* (2014) 223 Cal.App.4th 813, 829 (*Edward C.*).) "An appellate court will not lightly substitute its decision for that rendered by the juvenile court," and "will not disturb . . . [the] findings [of the juvenile court] when there is substantial evidence to support them." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.)

2.    *Analysis*

On appeal Christopher argues that the evidence does not demonstrate a probable benefit to him from commitment to the Division. (See *Edward C.*, *supra*, 223 Cal.App.4th at p. 829.) His argument as to probable benefit fails because the record is replete with evidence that the juvenile court was informed of and considered

---

[8] The wording of the statutes and regulation quoted in this passage from *Angela M.* has changed, but the changes do not alter the substance of the provisions. (See Ed. Code. §§ 56000, 56026, 56361; Cal. Code Regs., tit. 5, § 3030.)

Christopher's educational and treatment needs, and how those needs could be addressed by the Division.

Christopher contends that "the record indicates that [he] may have an undiagnosed mental health issue impairing his ability to function in his schooling and otherwise." Christopher also claims that evidence shows he was affected by ADHD, and that he showed signs of bipolar disorder, and suggests that the probation department and the juvenile court should have taken "steps to address [his] bipolar disorder diagnosis." He notes that the record suggests that he might require an IEP, but that there was no evidence as to whether Christopher's "particular educational needs" would be served by the Division. He argues that the evidence before the juvenile court "was not sufficient to make a legally adequate probable benefit finding in regards to his mental health and educational needs," and that the juvenile court "should have erred on the side of ordering more mental health and educational evaluations before committing Christopher to the [Division]." Christopher cites no authority that supports his position,[9] and we disagree with his characterization of the record.

The juvenile court was well informed as to Christopher's needs. The record contains abundant evidence that Christopher had behavioral issues, at least some of which were effectively addressed with medication, as well as substance abuse issues. The record includes conflicting evidence as to whether Christopher had mental health issues beyond ADHD, and whether he qualified for an IEP.

---

[9] Christopher's argument that the juvenile court abused its discretion in committing him the Division relies on two cases, neither of which supports his argument. *Ronnie P.*, *supra*, 10 Cal.App.4th at page 1088, holds that the juvenile court must review the circumstances at each dispositional hearing (as the juvenile court did here), and may not impose a lockstep escalation of dispositions, or determine dispositional issues in advance of the hearing (neither of which occurred here). Christopher's case, where commitment to the Division followed numerous less-restrictive dispositions, as well as escalating criminality, is nothing like *In re Joe A.* (1986) 183 Cal.App.3d 11, 29, where a dispositional order committing a minor to the California Youth Authority (now, the Division) was reversed because, rather than considering the particular case before it, the juvenile court apparently adopted the policy that a minor "gets one chance and one chance only" before being committed to the Division.

The record also reflects that the juvenile court was aware of how Christopher's needs might be met if he was committed to the Division. Division community liaison Doug Ugarkovich testified that the intake process for each minor includes "a full psychological assessment, educational assessment, at-risk-needs assessment, and also meeting with a licensed social worker," as well as assessment for disabilities. After the individual assessments are completed, a treatment plan is developed. The Division offers treatment for substance abuse, educational needs, and mental health problems. The dispositional report prepared by the probation department explained that the Division's substance abuse program includes a six-module curriculum of "Cognitive Behavior Interventions for Substance Abuse," that education services include high school, GED programs and college level and vocational courses, and that mental health services include psychotropic medication, intensive individual and group therapy, and a specialized program for "[y]outh with both serious mental disorders and aggressive/violent behavior," which offers skills in redirecting aggressive and violent behavior into "pro-social behaviors rather than violence toward themselves or others."

The juvenile court could reasonably rely on the evidence of the educational and mental health programs available at the Division to find that Christopher would probably benefit from commitment. (See *Edward C.*, *supra*, 223 Cal.App.4th at p. 829; § 734.) We conclude that the juvenile court did not abuse its discretion in committing Christopher to the Division.

We also conclude that no remand is necessary, because the juvenile court properly evaluated Christopher's educational needs and did not err in finding that Christopher did not have special educational needs. Christopher's argument that remand is necessary relies on *Angela M.*, in which the Court of Appeal remanded the matter "to permit the juvenile court to make proper findings, on a more fully developed record, regarding Angela's educational needs." (*Angela M.*, *supra*, 111 Cal.App.4th at p. 1399.) In *Angela M.*, the juvenile court "did not mention" the issue of Angela's education needs when committing her to the California Youth Authority, even though the court-appointed

psychologist reported that Angela " 'must undergo' " an IEP assessment. (*Id.* at pp. 1395, 1399.)

This case is unlike *Angela M.* Here, the probation department's report constituted substantial evidence that Christopher, who had undergone an IEP assessment, did not have special educational needs and did not need an IEP. The juvenile court heard testimony and argument about Christopher's educational needs and acknowledged the existence of "a conflict whether he should have had an IEP." Tojman, who met with Christopher in 2013, opined that Christopher "met the criteria" for special education and an IEP. But that does not negate the substantial evidence reflected in the probation department's report: In 2013 a school psychologist reported to the probation department, Christopher, his mother, and school staff on the outcome of "testing, which revealed that [Christopher] had no significant cognitive issues and required no special education services." Accordingly, the record here supports the juvenile court's finding that Christopher does not have exceptional educational needs. Christopher has not met his burden to demonstrate error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 ["A judgment or order of the lower court is presumed correct."].)

B.    *The Juvenile Court Lacked Authority to Impose Conditions of Probation After Committing Christopher to the Division*

The parties agree that a juvenile court lacks authority to impose discretionary probation conditions after it commits a minor to the Division. (*In re Ronny P.* (2004) 117 Cal.App.4th 1204, 1208 [commitment to the California Youth Authority deprives juvenile court of authority to directly supervise the juvenile]; *In re Allen N.* (2000) 84 Cal.App.4th 513, 516 [striking conditions of probation imposed on juvenile committed to California Youth Authority].)

At the dispositional hearing on June 16, the juvenile court did not pronounce any conditions of probation. However, that same day the juvenile court signed orders that suggest otherwise: a "Juvenile Court Minute Order" that referred to a "Disposition Minute Order" for terms and conditions of probation, and a "Juvenile Court Disposition" that included a page entitled "Terms and Conditions of Probation." Christopher requests

15

that we strike the probationary conditions in the Juvenile Court Disposition, and the Attorney General does not oppose his request. Accordingly, we will strike the conditions of probation from the juvenile court's June 16, 2015 written order.

## DISPOSITION

We strike the conditions of probation on page 2 of the Juvenile Court Disposition filed on June 16, 2015. In all other respects the judgment committing Christopher to the Division is affirmed. The juvenile court is directed to amend its records accordingly and to forward copies of any pertinent documents to the Director of the Division.

_____
Miller, J.

We concur:


_____
Kline, P.J.


_____
Stewart, J.

16