[No. F009651. Fifth Dist. Feb. 10, 1989.]

In re GERARDO B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GERARDO B., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

John M. Hanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Susan L. Burrell and Mark I. Soler as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Jane N. Kirkland and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HAMLIN, Acting P. J.**—Sixteen-year-old Gerardo B. (Gerardo) admitted two counts of auto theft. (Veh. Code, § 10851.) The 15 remaining counts combining auto theft and joyriding charges were dismissed with the district attorney reserving the right to comment on the dismissed counts at the dispositional hearing. Following the dispositional hearing, the juvenile court committed Gerardo to the California Youth Authority (YA). Gerardo appeals, contending the court abused its discretion in committing him to YA. For reasons to be explained, Gerardo's contention lacks merit. We will affirm the judgment.

### THE FACTUAL AND PROCEDURAL BACKGROUND

Gerardo's three-month crime spree ended in November of 1987 when law enforcement officers chased a stolen car occupied by Gerardo and his two

13-year-old coparticipants. The car crashed and all three fled. The two 13-year-olds were apprehended but Gerardo escaped. Gerardo called the Fresno Police Department a short time later and stated that he wanted to talk. He admitted 17 auto thefts.

At the time of the petition here, Gerardo had no previous contacts with the juvenile justice system. During the current and prior school years, Gerardo had poor attendance at school and was receiving failing grades. The school year preceding these, he was an A and B student at Computech, a school for gifted and talented children. He had been well behaved at home until he turned 16. He demonstrated good behavior while confined in juvenile hall.

After considering all local less restrictive programs, the probation officer recommended that Gerardo be committed to YA.

At the dispositional hearing the district attorney stated that if Gerardo had not openly discussed his behavior they could only have "gotten three or four" counts against him at the most. The district attorney expressed a wish that the maximum local confinement time could be one year. He stated that the only reason to send Gerardo to YA was for punishment and accountability. He felt that Gerardo was a danger to society. The district attorney stated to the court that he was undecided but thought Gerardo should be confined for more than 60 days. He recommended a YA commitment with hope that Gerardo would be released after a shorter period of confinement time than normal.

The court also found this to be a very troubling case, balancing Gerardo's lack of any previous record and his possession of an enormous amount of intellectual skills against the seriousness of the crimes he committed and his apparently being out of his mother's control. The court stated that it was disturbed at the long pattern of car thefts, the fact Gerardo had endangered the lives of others, and his recent poor performance at school and at home. The court continued as follows: "I agree that in one moment if I had a ranch, a camp or C.K. Wakefield Program that was in the area of 8 to 9 months or a year there would be no choice in my mind. I wouldn't even consider it for a moment, the California Youth Authority because this is a young man that has much potential. And I suspect that he's got, when I say, 'much potential' not just raw skills and talents, but I think he's come a long way. And I think he could benefit, but we do not have anything from which he can benefit that I know of.

"And I believe he can benefit by programs at the Youth Authority. He can also, suffer detriment from those programs, but I think he has an

intellect and I think he has the capacity to make some decision if he wants to make those decisions about which groups, about which path to follow.

"Without a meaningful option to deal with, what appears to be a young person in a very serious trouble time in his life, who's also presenting a serious risk to himself and others this Court proposes to commit you to the Youth Authority.

"I will write a letter indicating that I would welcome any analysis by them that I think sharing my feelings. And certainly I do not feel that a long period of—at the Youth Authority is essential, but I think that sufficient enough a period to get this boy back on the tract [*sic*] in his education and back in his values is needed. I think he needs another couple years to grow up. And I don't mean in the Youth Authority, but I mean, he needs a couple more years of developing and maturing.

"And I think he can make some better decisions in his life that I do not believe can be provided with the resources we have here. And I think the resources that the Youth Authority can provide that with a relatively brief period of time, particularly, aimed at his education and some structuring within his life, but I'll hear any other comments you have."

The court concluded its remarks by stating it had considered local, less restrictive programs and had found them inappropriate. Those that would have been appropriate were unavailable. The court found the minor could benefit from a YA commitment.

DISCUSSION

I.

*Commitment of Gerardo to YA.*

■ Gerardo asserts that the juvenile court judge was not fully satisfied that he would benefit from a YA commitment as required by Welfare and Institutions Code section 734.[1] He further contends that *In re Aline D.* (1975) 14 Cal.3d 557 [121 Cal.Rptr. 816, 536 P.2d 65] is applicable and requires that the YA commitment be set aside when the reason given for the commitment is that suitable alternatives do not exist. He urges that the juvenile court's reasons for committing him to YA did not justify the disposition.

---

[1] All future code references are to the Welfare and Institutions Code unless otherwise indicated.

The People counter that the juvenile court found that Gerardo would benefit by a YA commitment. There were no suitable local facilities from which Gerardo would benefit. A commitment to YA was entirely appropriate in view of Gerardo's age and the gravity of the offenses. In short, Gerardo has failed to show an abuse of discretion.

In 1984 the Legislature amended section 202. Prior to this, the courts consistently held that juvenile proceedings were designed for rehabilitative purposes and not punishment. In discussing such change the court in *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396 [234 Cal.Rptr. 103], pointed out: "The new provisions recognized punishment as a rehabilitative tool. (§ 202, subd. (b).) Section 202 also shifted its emphasis from a primarily less restrictive alternative approach oriented towards the benefit of the minor to the express 'protection and safety of the public' (§ 202, subd. (a); . . .), where care, treatment, and guidance shall conform to the interests of public safety and protection. (§ 202, subd. (b).)

"Thus, it is clear the Legislature intended to place greater emphasis on punishment for rehabilitative purposes and on a restrictive commitment as a means of protecting the public safety. This interpretation by no means loses sight of the 'rehabilitative objectives' of the Juvenile Court Law. (§ 202 subd. (b).) Because commitment to CYA cannot be based solely on retribution grounds (§ 202, subd. (e)(5)), there must continue to be evidence demonstrating (1) probable benefit to the minor and (2) that less restrictive alternatives are ineffective or inappropriate. However, these must be taken together with the Legislature's purposes in amending the Juvenile Court Law."

Section 734 provides: "No ward of the juvenile court shall be committed to the Youth Authority unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority."

In *In re Aline D., supra,* 14 Cal.3d 557 numerous attempts were made to find a suitable placement for Aline. (*Id.* at pp. 559-560.) Seven facilities were found unsuitable for her. Two psychiatrists and one psychologist recommended that Aline not be committed to YA. The juvenile court referee noted the lack of options and stated that Aline could not simply be left in juvenile hall because that was a detention facility. The referee was reluctant to dismiss the case because Aline's mother did not want her back. Although the referee thought these were not appropriate considerations for commitment to YA, the referee committed Aline to YA because it was the only alternative other than setting her free. (*Id.* at pp. 561-562.) The referee

signed a form that stated Aline would probably benefit from YA commitment. (*Id.* at p. 562.)

The Supreme Court reversed the order committing Aline D. to YA. The court stated: "[A] CYA commitment may not be made for the *sole* reason that suitable alternatives do not exist." (14 Cal.3d at p. 562, italics added.) The referee expressed substantial dissatisfaction with the YA commitment and was far from being "fully satisfied" as required by section 734. (*Ibid.*) As part of its decision, the Supreme Court relied on the now outdated conclusion that a YA commitment was solely for rehabilitation and not punishment. (*Id.* at p. 567.)

In *John O.* v. *Superior Court* (1985) 169 Cal.App.3d 823 [215 Cal.Rptr. 592] a petition was filed alleging that John O. came within the provisions of section 602. The court referred the matter to the probation department to determine John's suitability for informal supervision pursuant to section 654.[2] Although the probation officer thought John could be a candidate for informal supervision, he said that this option was not available due to county budget cuts. (*Id.* at p. 825.) The court denied John's request for informal probation, stating in three different ways "that informal supervision is not available to John, because the county fisc lacks adequate funds to provide such supervision." (*Id.* at p. 828.) The appellate court found that the juvenile court erred in denying informal supervision to John on that ground. The court did not evaluate "the probation officer's determination of John's suitability for informal probation as required by section 654 and California Rules of Court, rule 1307 . . . ." (*Ibid.*) The case was remanded for redetermination by the court on the basis of the probation officer's evaluation of the appropriate factors. (*Id.* at pp. 828-829.)

---

[2] Section 654 provides in pertinent part: "In any case in which a probation officer, after investigation of an application for a petition or any other investigation he or she is authorized to make concludes that a minor is within the jurisdiction of the juvenile court or will probably soon be within that jurisdiction, the probation officer may, in lieu of filing a petition to declare a minor a dependent child of the court or a minor or a ward of the court under Section 601 or requesting that a petition be filed by the prosecuting attorney to declare a minor a ward of the court under Section 602 or subsequent to dismissal of a petition already filed, and with consent of the minor and the minor's parent or guardian, delineate specific programs of supervision for the minor, for not to exceed six months, and attempt thereby to adjust the situation which brings the minor within the jurisdiction of the court or creates the probability that the minor will soon be within that jurisdiction. Nothing in this section shall be construed to prevent the probation officer from filing a petition or requesting the prosecuting attorney to file a petition at any time within the six-month period. If the probation officer determines that the minor has not involved himself or herself in the specific programs within 60 days, the probation officer shall immediately file a petition or request that a petition be filed by the prosecuting attorney. However, when in the judgment of the probation officer the interest of the minor and the community can be protected, the probation officer shall make a diligent effort to proceed under this section."

In our view the case before us is distinguishable from *Aline D.* and *John O.* The court here did not commit Gerardo to YA solely because alternative placements were unavailable nor did it base its commitment solely on impermissible reasons. The court expressed its understandable dismay that there were no alternative long-term local facilities. A court should not be precluded from expressions of regret or concern when explaining its chosen disposition to the minor. (See dis. opn. in *In re Aline D., supra,* 14 Cal.3d at pp. 567, 569.) If the court here had made the statement that it "would not even consider YA if there was a long-term local program" without more, the commitment of Gerardo to YA would have been inappropriate. But, the court examined closely all relevant factors, including those listed in section 725.5.[3] The court acknowledged Gerardo's prior clean record. It discussed punishment for accountability which it felt was rehabilitative. The court found that Gerardo was 16 and entering adulthood, as compared to a child entering puberty. It stated that Gerardo was a "mental giant" over his coparticipants. Gerardo engaged in a long pattern of thefts and endangered the lives of others. The court noted Gerardo's performance in school and at home was disturbing and that the mother had lost control of him. It considered the programs at YA, and observed that although Gerardo could suffer detriment, it felt that he was bright enough to choose the right option and benefit from the programs. Thus, the court's analysis underlying his commitment order covered those criteria to be considered when one commits a minor to YA. Furthermore, when *Aline D.* was written, a commitment to YA was only for rehabilitative purposes. The shift in the law to include punishment and protection of society as valid considerations expands the group of people who may be appropriately committed to YA. Here, the court recognized that there should be a measure of accountability as rehabilitative punishment and that this can be accomplished through a YA commitment. In our view, the court's criticized statement was merely a concerned expression detailing the sad state of affairs that has befallen the juvenile justice system, and in particular the system in Fresno County, due to a lack of county funding. This should not preclude his commitment order from being upheld when the order was made based upon a careful analysis of the correct considerations. It is clear that, unlike the court in *Aline D.,* the court did not find a commitment to YA inappropriate; it merely found that a different type of program may have been more appropriate. If two programs are found appropriate and one is found unavailable for whatever reasons, the court should not be hindered in view of the situation before it from choosing the perhaps less desirable program. (See *In re James S.*

---

[3] Section 725.5 provides: "In determining the judgment and order to be made in any case in which the minor is found to be a person described in Section 602, the court shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history."

(1978) 81 Cal.App.3d 198, 201 [144 Cal.Rptr. 893].) The court was fully satisfied that Gerardo would benefit by the treatment provided by YA and did not abuse its discretion in committing Gerardo to YA.

## II.*

· · · · · · · · · · · · · · · · · · · · · ·

The judgment is affirmed.

Stone (W. A.), J., and Baxter, J., concurred.

---

* See footnote, *ante,* page 1252.