Filed 5/20/15  In re Adrian R. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ADRIAN R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>ADRIAN R.,<br><br>    Defendant and Appellant. | F069695<br><br>(Super. Ct. No. 505631)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Shawn D. Bessey, Judge.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Gomes, Acting P.J., Kane, J. and Peña, J.

Adrian R. appeals from his commitment to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ).[1]  We modify the dispositional order with respect to the award of custody credits but otherwise affirm.

## FACTS AND PROCEDURAL HISTORY

*Prior Proceedings*

On April 18, 2012, the Fresno County District Attorney filed a juvenile wardship petition under section 602, alleging Adrian violated Penal Code section 21310 by carrying a dirk or dagger concealed on his person.  Adrian failed to appear for the detention hearing, and an arrest warrant was issued.  On May 7, 2012, Adrian admitted the allegation.  Based on the residence of Adrian and his mother, the matter was transferred to Stanislaus County for disposition.  According to the dispositional social study, although Adrian denied associating with gang members, he told the officers who arrested him for carrying the knife that he had it for protection, because earlier that day he was in a fight with Bulldog gang members.  Adrian admitted wrongdoing, but did not express remorse.  The dispositional social study revealed Adrian had two prior delinquency matters that were closed at intake, and a prior petition that was dismissed.  The probation officer viewed Adrian as "moderately delinquently oriented."  On July 9, 2012, the court deemed the offense to be a misdemeanor; declared Adrian a ward of the court; placed him on probation on various terms and conditions; and ordered him to serve a total of 45 days in juvenile hall and on home commitment.

On December 6, 2012, the Stanislaus County District Attorney filed a wardship petition under section 602, alleging Adrian committed vehicle theft (Veh. Code, § 10851, subd. (a); count 1) and receiving stolen property (Pen. Code, § 496d, subd. (a); count 2).  On December 27, 2012, Adrian admitted count 1, and count 2 was dismissed.  According

---

[1]     DJJ is sometimes referred to as the Division of Juvenile Facilities.  (See, e.g., Welf. & Inst. Code, § 1710, subd. (a); further statutory references are to the Welfare and Institutions Code unless otherwise stated.)

to the dispositional social study, Adrian was seen driving the victim's car, which was reported stolen after the victim's house was burglarized. He admitted driving the victim's car, but denied knowing it was stolen or any knowledge of the burglary. On December 27, 2012, the court declared the offense to be a felony; continued Adrian as a ward of the court; placed him on probation on various terms and conditions; and ordered him to serve a total of 90 days in juvenile hall and on home commitment.

*Current Proceedings*

On March 28, 2013, the Stanislaus County District Attorney filed a wardship petition under section 602, alleging Adrian committed a lewd and lascivious act on a child under the age of 14. (Pen. Code, § 288, subd. (a).) According to the detention report, the 11-year-old victim reported having sexual intercourse with Adrian on February 14, 2013. The girl stated the sex was consensual, but Adrian, who was 16, knew she was only 11. The victim stated Adrian used a condom; she confirmed there was penile penetration and said that afterward, Adrian told her it was their little secret. When Adrian was interviewed, his story coincided with that of the victim, except he denied there was penetration. On April 19, 2013, Adrian admitted the allegation. Prior to his admission, he was advised that although he did not presently appear suitable for a DJJ commitment, should he violate probation seriously enough, he could face such a commitment in the future, which would result in an obligation to register as a sex offender. He was also advised that sex offender counseling would be a condition of probation, and that his maximum confinement time on this petition was 96 months, but that since he had other charges previously, his total would be 108 months of confinement time. Adrian stated he understood the advisements.

According to the dispositional social study, Adrian's school attendance and performance were unsatisfactory. Although Adrian admitted wrongdoing, he did not agree with the police report or express remorse. The probation officer viewed him as "significantly delinquently oriented." A Juvenile Assessment and Intervention System

3.

(JAIS) evaluation scored him in the high risk level, and explained youth with a high risk level have the greatest potential for recidivism, with typically 45 to 55 percent of such youths either being revoked or experiencing a new felony conviction within 24 months of placement on probation or parole supervision. On May 16, 2013, the court continued Adrian as a ward of the court; placed him on probation on various terms and conditions, including that he participate in sex offender counseling with Parents United; and ordered him to serve 270 days in juvenile hall.

On May 21, 2014, the Stanislaus County Probation Department filed a notice of violation of probation (§ 777), alleging Adrian left Stanislaus County without permission and failed to report to the probation officer as directed, be in his home between specified hours, and participate in sex offender counseling. According to the notice, on September 11, 2013, Adrian was directed to enroll in Parents United immediately. On December 2, 2013, Parents United reported they had no record of him.

On May 28, 2014, the Stanislaus County District Attorney filed a wardship petition under section 602, alleging Adrian committed two counts of battery (§ 242), the second of which was against his mother. According to the detention report, on April 28, 2014, Adrian was involved in a physical altercation with his mother and her friend at the friend's house. During the altercation, Adrian grabbed the friend by the throat and squeezed, then pushed her away. He then punched his mother on the side of her face twice with his fist, causing her to fall. Adrian then fled. On May 30, 2014, Adrian admitted the violations of probation and count 1 of the petition. Count 2 was dismissed.

The dispositional social study reported Adrian's school attendance and achievement were poor, as was his health. With respect to the incident involving the 11-year-old girl, Adrian said he should never have admitted to it. He said he and his mother were living with friends, and he was the only male in the house and got blamed for things he did not do. He guessed the victim was protecting her 21-year-old boyfriend, and told her parents she and Adrian had sex so her boyfriend would not get in trouble. As for not

4.

attending counseling, Adrian said he had called Parents United and made an appointment, but his mother did not have a car, they had no money, and the bus system was confusing, so he could never get there.

The probation officer reported contacting a parole agent assigned to the Intake and Court Services Unit for DJJ. The parole agent provided the officer with information regarding DJJ's Sex Behavior Treatment Program (SBTP), the only evidence-based juvenile sex offender program in the country. The parole agent related that upon Adrian's arrival in DJJ, SBTP would complete a comprehensive assessment to individualize his treatment plan, and Adrian would then be placed in a therapeutic community living unit devoted to sex offender treatment. His family also would receive counseling.

The probation officer recommended a DJJ commitment on only the March 28, 2013, petition (i.e., without aggregation). The officer stated it was obvious Adrian had no intention of completing sex offender treatment out of custody; he and his mother were basically transient with no transportation. If committed to DJJ, however, Adrian would participate in the only evidence-based sex offender program in the country, whereas he was at high risk to reoffend if he did not participate in sex offender treatment. He would also receive the opportunity to earn his high school diploma, as he was extremely far behind on his credits due to lack of attendance.

On June 18, 2014, the People moved to dismiss the May 28, 2014, petition pursuant to section 782 and *In re Greg F.* (2012) 55 Cal.4th 393, in order to make Adrian eligible for a DJJ commitment. On June 26, 2014, a contested hearing was held.

Probation Officer Brandon, the author of the dispositional social study, testified he had "no idea" what efforts Adrian or his mother had made with respect to Parents United counseling. Although Adrian said they called and made an appointment but he could not get a ride, Brandon talked with Parents United, and they had no record of any contact with Adrian. Although there was usually a lag — perhaps three weeks — between the

5.

referral and getting the minor started in counseling, in Adrian's case, three months had passed. He was referred in September and told Brandon he had been going, then Brandon found out in December this was not true. Brandon did not know whether Adrian would have been responsive to Parents United; he made himself unavailable by disappearing for six months. Adrian was now in custody, and could not do the Parents United program while detained.

Brandon explained that although there was general mental health counseling available to minors in custody, there was no sex offender counseling for such minors that had been approved by the probation department.[2] Brandon knew of out-of-state group homes — specifically one in Utah — that addressed sex offenders, although these were not approved by the probation department. Such a placement was rejected in Adrian's case in any event, because he was extremely close to age 18. Although he could voluntarily remain in placement after the age of 18, nobody would take him. In addition, sex offender counseling, out of custody, takes about a year even if the person is receptive and committed to the counseling.

Brandon clarified he was not merely saying there was no local or in-state alternative where Adrian could be placed soon enough for counseling to be effective; rather, Brandon was not convinced Adrian needed to be out of custody — even in a group home — based on Adrian's behavior alone. Brandon pointed to Adrian's runaway status, dishonesty, and manipulations. Because of the change in the law, alternative placement (as opposed to commitment) at DJJ was no longer an option, either.

Brandon believed the sex offender counseling program at DJJ lasted until the individual completed it. Adrian could be housed at DJJ until the age of 23, but could be released in about three years, depending on how he progressed in treatment. Asked if he

---

**2**     The probation department wanted someone who specialized in sex offender counseling and holding offenders accountable for their behavior.

thought three years of sex offender counseling was necessary, Brandon replied, "I would think that and additional counseling and education as well." The Parents United program normally took about a year and a half, with the minor being out of custody and attending once a week. Brandon originally thought that was appropriate for Adrian, but he now believed Adrian needed a much longer program, based on Adrian's behavior since he was adjudicated for the sex offense. Brandon pointed to Adrian's failure, so far, to engage in Parents United; the fact he was getting close to age 18; and his failure to make himself available for any services. With respect to the offense itself, Brandon noted Adrian was out of custody only a few weeks before he had sexual intercourse with an 11 year old. At some point in time, there was manipulation, particularly when Adrian told the victim it was their little secret. In Brandon's opinion, Adrian would continue manipulating. Brandon conceded that, as far as he knew, there were no new allegations of a sex offense; however, although he did not know if Adrian was going to reoffend, he believed that, without three years of counseling and services as opposed to 16 months, there was a high likelihood of reoffense.

Brandon agreed that if Adrian were to spend some time in juvenile hall and then enroll in Parents United as soon as practical upon release, Adrian likely would have adequate time to complete that program (assuming he attended regularly and involved himself) while still within the probation department's jurisdiction. Based on Adrian's age by the time he was released, however, he would enroll in the longer adult program. Brandon did not know if Adrian would complete the program. If he did not, it would be a violation of probation. Brandon had not seen anything, in Adrian's past compliance with the terms of his probation, to cause Brandon to believe Adrian would be able to continue with a program while out of custody. Asked about the possibility of leaving Adrian on probation, but with a "DJJ hammer" over him, Brandon pointed out that on March 28, 2013, the court warned Adrian of a DJJ commitment and gave him his maximum confinement time, so Adrian had already had that over him.

7.

Brandon related that as far as he knew, Adrian's performance and conduct while in juvenile hall was fine. In his experience, minors are usually well behaved in custody; the problem was what happened when they were out of custody. Brandon opined Adrian was at moderate risk to reoffend. The statement in his report that Adrian was at high risk was based on Brandon's opinion of Adrian not engaging in counseling. Brandon conceded that the Juvenile Sexual Offense Recidivism Risk Assessment Tool (JSORRAT) scored Adrian at a moderate risk to reoffend, absent treatment.[3] Brandon disagreed and felt Adrian was a high risk without treatment.

Adrian's mother related that Adrian's daughter was born in June 2014, and Adrian had also been sick. She represented she had called Parents United and gotten an appointment, but she arrived two minutes late and they would not let her in. She went a second time, but her mother called to inform her Adrian had collapsed, and so Adrian's mother had to return home to take Adrian to the emergency room. Adrian's mother called Parents United to make a new appointment, but had to wait another month and then forgot to reschedule again, because she had been taking Adrian back and forth to doctors. Then her mother became ill. Adrian was ready to start attending, but could not go until his mother completed the required assessment. His mother became overwhelmed with everything that was happening. Then Adrian started getting sick and feeling as if his body was shutting down. He ended up running away and being gone about a month or six weeks because he wanted to spend time with his family, who lived out of town.

In response to the comments of Adrian's mother, Brandon stated that when he interviewed Adrian for the disposition report, Adrian revealed he believed he had cancer. Brandon wondered if, were Adrian committed to DJJ, DJJ could provide appropriate medical treatment, so he talked to "medical" at DJJ. They were not aware Adrian had been diagnosed with cancer. They contacted Adrian's doctor, who had no record of any

---

[3]     Adrian scored a six on a scale of one to 10.

such diagnosis.  Based on this, Brandon did not know how true Adrian's claim was or whether he was manipulating the situation.  He did learn, however, that DJJ has "the best medical treatment the State can provide."

After argument, the court granted the People's motion to dismiss the May 28, 2014, petition pursuant to section 782.  It stated it was considering the legal arguments, reports, evidentiary testimony, and comments, and was also taking judicial notice of the entire file, including all previous findings and orders of the court.  The court stated:

> "Taking a look at what has been going on since he was released from juvenile hall, the Court could only say that it's very disappointed in the progress that Adrian has shown .…  Specifically, … the purpose of imposing the previous sentence was to engrain in Adrian's mind that it was a serious offense.  The Court took it very serious, and he needed to take some drastic measures to change his behavior and to comply not only with the terms of probation, but to get services to better prepare himself not only for just being a young man, but for exactly what has happened here.  To take on the responsibilities of being a father and a responsible person for your family .…  [¶] … [¶]

> "With that, I find that you haven't taken advantage of those services and you're still in need of services.  There's no doubt.…

> "I am going to be sentencing [*sic*] you to the Department of Juvenile Justice this afternoon.

> "This is what I hope you get out of it.  You're going to be provided services, specifically the sex offender services that you haven't availed yourself of.  And that's also taking into consideration the comments that were said originally when we had the disposition, some letters from the family members that indicate you weren't quite getting the support you needed in that particular area.

> "Department of Juvenile Justice does have one of the best sexual offender type of counseling programs that we can afford somebody.  And I think that part of this is going to not only be towards sexual offender counseling and understanding the seriousness of the past events, but how to treat people in the future, how to provide for a young child and teach them as they grow up to act appropriately in those regards as well.  And then there will be additional services that the Department of Juvenile Justice will be able to provide.

"Namely, if there are some medical issues, we do have the capability of looking at those medical issues, giving Adrian the care he needs as it relates to the medical or psychological or emotional services that may be needed. [¶] … [¶]

"The Court has … considered all reasonable alternatives. Specifically, I've considered what [defense counsel] has proffered.[4] The fact is, Adrian hasn't done anything on probation since we had him — he's been provided services not only from sustained petitions, but probation has been providing services to Adrian for a long time, even on an informal basis. And I think at this point we need to step up our efforts. And although I really considered [defense counsel]'s alternative …, just at this point not confident that Adrian would prosper or do well in that setting. He has not shown any indication that he has taken any incentive on his own, … even under the guidance of the probation officer, to get any of those accomplished.

"He does, however, do really well while in a confined setting such as juvenile hall. I'm very familiar with his progress and his ability in the hall.… And I do concur with [defense counsel] on that, that in a confined setting, Adrian does do well. We just need to be able to transition once he gets done with his training opportunity here with the Department of Juvenile Justice.

"The Court is going to set the maximum physical confinement at eight years. That is for the petition dated March 28th, 2013. And that is for the 288(a) of the California Penal Code.…

"The Court is using its discretion in not committing Adrian to Department of Juvenile Justice for the other petitions previous to that that were sustained.…

"So it's eight years, California Department of Corrections and Rehabilitation, Division of Juvenile Justice, based on the facts and circumstances of the matter which … continued the minor under the jurisdiction of the juvenile court. This will hold the minor accountable,

---

**4** Defense counsel requested that the court dismiss the most recent petition in order to have a possible DJJ commitment "hanging right over [Adrian's] head" as a means of getting Adrian to enroll in, and follow through with, the Parents United program. Defense counsel also stated he was not asking the court to release Adrian immediately, if the court wished to impose additional juvenile hall time.

afford him an opportunity to rehabilitate, and provide protection to the community.  [¶] … [¶]

"… [T]he Juvenile Sexual Offense Recidivism Risk Assessment Tool was reviewed and considered.  And that was scored at a six, moderate. I've also taken into consideration Mr. Brandon's information that he felt it was a higher risk."

## DISCUSSION

I.   **THE JUVENILE COURT DID NOT ABUSE ITS DISCRETION BY COMMITTING ADRIAN TO DJJ.**

Adrian says the juvenile court abused its discretion by committing him to DJJ, because (1) such commitment would not be a probable benefit to him, and (2) less restrictive, effective, and appropriate disposition alternatives existed but were rejected. His contentions fail.

An appellate court "reviews a commitment decision for abuse of discretion, indulging all reasonable inferences to support the juvenile court's decision.  [Citations.]" (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396; accord, *In re Asean D.* (1993) 14 Cal.App.4th 467, 473.)  "When the question on appeal is whether the trial court has abused its discretion, the showing is insufficient if it presents facts which merely afford an opportunity for a difference of opinion.  An appellate tribunal is not authorized to substitute its judgment for that of the trial judge.  [Citation.]" (*People v. Stewart* (1985) 171 Cal.App.3d 59, 65; see *In re Todd W.* (1979) 96 Cal.App.3d 408, 416.)  Rather, the standard "asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts [citations]." (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

In deciding whether the juvenile court acted arbitrarily or irrationally in ordering a DJJ commitment in a particular case, we assess the record, and evaluate the exercise of discretion, in light of the purposes of the Juvenile Court Law.  (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395; see *In re Lorenza M.* (1989) 212 Cal.App.3d 49, 57-58.) "Under section 202, juvenile proceedings are primarily 'rehabilitative' (*id.*, subd. (b)),

11.

and punishment in the form of 'retribution' is disallowed (*id*., subd. (e))" (*In re Eddie M.* (2003) 31 Cal.4th 480, 507); however, the law recognizes punishment as a tool of rehabilitation, and strives to provide for the protection and safety of the public as well as each minor under the juvenile court's jurisdiction (§ 202, subds. (a) & (b); *In re Asean D.*, *supra*, 14 Cal.App.4th at p. 473; *In re Michael D.*, *supra*, 188 Cal.App.3d at p. 1396).

In determining the appropriate disposition, the juvenile court is required to "consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.) In order for a minor to be statutorily eligible for a DJJ commitment, his or her most recent offense must be listed in subdivision (b) of section 707 or subdivision (c) of Penal Code section 290.008. (§ 733, subd. (c); see *In re D.B.* (2014) 58 Cal.4th 941, 944.) "The Legislature's primary purpose in enacting [section 733, subdivision (c)] was to reduce the number of juvenile offenders housed in state facilities by shifting responsibility to the county level '"for all but the most serious youth offenders."'" [Citations.]" (*In re D.B.*, *supra*, at p. 948.) Adrian admitted committing a lewd and lascivious act on a child under 14, an offense listed in Penal Code section 290.008, subdivision (c)(2).[5] He thus falls within the group of juvenile offenders deemed most serious by the Legislature.

"A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.) "To support a [DJJ] commitment, it is required that there be evidence in the record demonstrating probable benefit to the minor, and evidence supporting a determination that less restrictive alternatives are ineffective or inappropriate." (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 576; see § 734.) Less restrictive placement do not actually have to

---

[5] The juvenile court had authority to dismiss Adrian's May 28, 2014, petition to render him DJJ-eligible following his violation of probation on the March 28, 2013, petition. (*In re Greg F.*, *supra*, 55 Cal.4th at pp. 400, 419-420.)

have been tried, however.  (*In re Teofilio A.*, *supra*, at p. 577.)  Although substantial evidence — evidence that is reasonable, credible, and of solid value — is required (*In re Michael D.*, *supra*, 188 Cal.App.3d at p. 1396; see *In re Jorge G.* (2004) 117 Cal.App.4th 931, 942), "'[w]e have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence.'  [Citation.]"  (*In re Edward C.* (2014) 223 Cal.App.4th 813, 829.)  "[T]he broadest range of information pertinent to the ward, especially his past behavior and performance while a ward, must be considered and evaluated in deciding the level of 'physical confinement' to be imposed .…"  (*In re Jimmy P.* (1996) 50 Cal.App.4th 1679, 1684-1685.)  Where substantial evidence of probable benefit and the inappropriateness or ineffectiveness of less restrictive alternatives exists, a DJJ commitment is not an abuse of discretion.  (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250.)

With respect to probable benefit, Adrian argues there was no evidence the Parents United program could not provide him the treatment he required.  He also says the juvenile court did not determine the sex offender program at DJJ would be more effective than Parents United, but instead committed Adrian to DJJ because it believed no other effective, custodial sex offender treatment options existed in Stanislaus County.

The record does not support Adrian's claims.  Moreover, even if we were to assume Parents United could provide Adrian the treatment he required and (assuming Adrian would engage in counseling while out of custody — something he had been given the opportunity to do, with no success, in the past) would be at least as effective as the sex offender program at DJJ, this would not mean a DJJ commitment would be of no probable benefit to Adrian.  (See *In re Gerardo B.* (1989) 207 Cal.App.3d 1252, 1258 (*Gerardo B.*).)  There was ample evidence of probable benefit.

Adrian points to the California Supreme Court's opinion in *In re Aline D.* (1975) 14 Cal.3d 557, wherein the court stated:  "The unavailability of suitable alternatives,

13.

standing alone, does not justify the commitment of a nondelinquent or marginally delinquent child to an institution primarily designed for the incarceration and discipline of serious offenders." (*Id*. at p. 567.) Adrian was not "marginally delinquent," however, nor did the court commit him to DJJ solely because alternative placements were unavailable. (See *Gerardo B.*, *supra*, 207 Cal.App.3d at p. 1258.) Furthermore, as we explained in *Gerardo B.*, "[W]hen *Aline D.* was written, a commitment to [DJJ] was only for rehabilitative purposes. The shift in the law to include punishment and protection of society as valid considerations expands the group of people who may be appropriately committed to [DJJ]. Here, the court recognized that there should be a measure of accountability as rehabilitative punishment and that this can be accomplished through a [DJJ] commitment.… It is clear that, unlike the court in *Aline D.*, the court did not find a commitment to [DJJ] inappropriate .… The court was fully satisfied that Gerardo would benefit by the treatment provided by [DJJ] and did not abuse its discretion in committing Gerardo to [DJJ]." (*Id*. at pp. 1258-1259.)

With respect to less restrictive alternatives, Adrian points to Brandon's testimony about possible group home placement, and he says Parents United remained a viable alternative because he would have had the "'DJJ hammer'" hanging over him and so it is reasonable to conclude his conduct would have improved. Brandon's testimony concerning why he rejected a possible group home placement constituted substantial evidence such an alternative was inappropriate. Moreover, as Brandon pointed out, Adrian was already aware he was facing a lengthy DJJ commitment if he committed a significant violation of probation, yet still failed to participate in Parents United. In light of Adrian's attitude toward his 11-year-old victim and the offense, the juvenile court reasonably concluded he was in need of sex offender treatment despite the fact he had committed no new sex offenses, and the record supports a conclusion anything short of DJJ would be inappropriate and/or ineffective.

14.

To summarize, the juvenile court considered all the proper factors in committing Adrian to DJJ. Substantial evidence supports its findings of probable benefit and rejection, as inappropriate or ineffective, of less restrictive alternatives. (See *In re Edward C.*, *supra*, 223 Cal.App.4th at p. 829; *In re Jonathan T.* (2008) 166 Cal.App.4th 474, 485-486.) The court did not abuse its discretion.

## II. ADRIAN WAS ENTITLED TO 195 DAYS OF PREDISPOSITION CUSTODY CREDIT.

Adrian says the juvenile court incorrectly calculated his predisposition custody credits, awarding credit for 192 days when Adrian was entitled either to 195 or 200 days. Because the record is unclear which total is correct, he claims, we must reverse the dispositional order with respect to the amount of credit and remand the matter to the juvenile court with directions to calculate the correct amount. The Attorney General concedes error, but says the dispositional order should be modified to reflect 195 days credit. We conclude there is enough information in the record for us to calculate the credit ourselves (cf. *In re Antwon R.* (2001) 87 Cal.App.4th 348, 353), and agree with the Attorney General as to the correct amount.

"If the minor is removed from the physical custody of his or her parent … as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense …." (§ 726, subd. (d)(1).) Physical confinement includes placement in juvenile hall. (*In re J.M.* (2009) 170 Cal.App.4th 1253, 1256.) Generally speaking, Penal Code section 2900.5, subdivision (a) entitles an adult offender to credit against his or her term of imprisonment for "all days" he or she spent in custody prior to sentencing. Although the statute deals with adults, not juveniles, the California Supreme Court has determined juveniles are entitled to credit for all days of actual precommitment confinement against the maximum period of confinement time, in order to comply with section 726's

15.

mandate.  (*In re Eric J.* (1979) 25 Cal.3d 522, 536; see *In re Randy J.* (1994) 22 Cal.App.4th 1497, 1503.)

The accrual of custody credits under Penal Code section 2900.5 begins when the individual is processed into a custodial situation, such as a juvenile detention facility described in subdivision (a) of the statute, and not merely when the individual is taken into the custody of police.  (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 919-920; accord, *People v. Macklem* (2007) 149 Cal.App.4th 674, 702.)  Because the statute speaks in terms of "days" and not "hours," any partial day is treated as a whole day.  Accordingly, a sentencing court is required to award presentence credit for the day of sentencing, where the defendant has remained in custody between conviction and sentencing.  (*People v. Smith* (1989) 211 Cal.App.3d 523, 526.)  It appears this rule is also applicable to juvenile proceedings (see *In re Antwon R.*, *supra*, 87 Cal.App.4th at p. 352); hence, a minor must be awarded credit for the day of disposition if he or she is in custody on that day.

Adrian was arrested for the offense that ultimately resulted in his DJJ commitment on March 27, 2013.[6]  He remained detained beyond disposition, and was released from his juvenile hall commitment on August 28, 2013.  From his arrest to his release, he spent 155 days in custody.  Adrian was taken into custody for violating the terms of his probation in the above matter on May 18, 2014.[7]  The disposition hearing was held on

---

[6]  Nothing in the record suggests the date of arrest and the date of processing into the juvenile detention facility were different.  Accordingly, we begin our calculation from the date of arrest.  Because the juvenile court exercised its discretion not to aggregate Adrian's prior petitions (§ 726, subd. (d)(3); see *In re Sean W.* (2005) 127 Cal.App.4th 1177, 1183), we do not concern ourselves with predisposition custody credits attributable to those matters.  (See *In re A.M.* (2014) 225 Cal.App.4th 1075, 1085-1086.)

[7]  Subdivision (b) of Penal Code section 2900.5 permits credit to be awarded pursuant to that section "only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted."  The California Supreme Court has extended this limitation to juvenile proceedings.  (*In re Ricky H.* (1981) 30 Cal.3d 176, 185.)                    [*fn. cont'd on next page*]

16.

June 26, 2014. From May 18 to June 26, 2014, Adrian spent 40 days in custody. Adding the two periods together results in a total of 195 days in precommitment custody, not the 192 days for which he was given credit.

## DISPOSITION

The June 26, 2014, disposition order is modified to reflect credit is to be given for 195 days already spent in confinement. As so modified, the judgment is affirmed. The juvenile court is ordered to cause to be prepared and filed an amended commitment order showing said modification, and to transmit a certified copy of same to the appropriate authorities.

---

Adrian was arrested on April 28, 2014, on the petition that subsequently was dismissed. It appears he was detained on that petition when arrested for violating his probation. The violations of probation did not include the commission of the new offenses upon which the petition was based. Thus, the alleged new offenses — which were the sole basis for Adrian's detention in juvenile hall prior to May 18, 2014 — were unrelated either to his original offense or to the ultimate finding he violated the terms of his probationary grant for that offense. They "[were] clearly and simply not for the same conduct for which he had been [adjudged a ward of the court] and [committed to DJJ]. In the words of [Penal Code] section 2900.5, subdivision (b), that initial custody was not 'attributable to proceedings related to the same conduct for which the defendant has been convicted.'" (*People v. Pruitt* (2008) 161 Cal.App.4th 637, 649; see *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1485; *People v. Huff* (1990) 223 Cal.App.3d 1100, 1104-1106.) Accordingly, Adrian was not entitled to begin accruing precommitment credit until May 18, 2014. That the time between April 28, 2014, and that date is therefore "'dead time,' that is, time spent in custody for which he receives no benefit," is, under the circumstances of this case, "unavoidable." (*In re Marquez* (2003) 30 Cal.4th 14, 20.)

17.